[Civ. No. 12960. Second Dist., Div. Two.—April 17, 1941.]

Estate of ELSE LACKNER REINICKE, Deceased. J. H. BOOGE, as Trustee, etc., Appellant, v. GEORGE R. REINICKE, as Administrator With the Will Annexed, etc., Respondent.

Manierre & Cuthbertson for Appellant.

Laurence B. Martin and Samuel Reisman for Respondent.

WOOD, J.—Else Lackner Reinicke died on March 30, 1937, leaving a will by which her husband George R. Reinicke was given all of her property, with minor exceptions which need not be here detailed. The will was admitted to probate and Mr. Reinicke was appointed administrator with the will annexed. He filed his first account, to which exceptions were filed by appellant J. H. Booge, trustee. This appeal is prosecuted from the order of the court approving the account.

Appellant contends that the trial court erred in finding that appellant is not a "person interested in the estate" and therefore is not entitled to object or except to the account of the administrator. An action was commenced by appellant in the Superior Court of Los Angeles County on July 2, 1937, against Mr. Reinicke personally and on February 23, 1939, appellant recovered a judgment in that action in the sum of $5,310 and interest. The sum of $100 only has been paid on this judgment. On November 3, 1937, a writ of attachment was levied on the interest of Mr. Reinicke as heir, legatee or devisee of the estate of Else Reinicke in the manner required by section 561 of the Code of Civil Procedure. On May 22, 1939, a writ of execution was issued in the same action, which was levied upon Mr. Reinicke's interest in the estate. It appears therefore that appellant is a judgment creditor of Reinicke personally and the holder of a lien against his interest in the estate. It is provided in section 561 of the Code of Civil Procedure that the "interest of a defendant in personal property belonging to the estate of a decedent, either as heir, legatee or devisee, may be attached by serving the personal representative of the decedent with a copy of the writ . . . ". It is further pro-

vided that upon distribution of the estate distribution shall be ordered to such heir, legatee or devisee but delivery of "such property" shall be ordered to the officer making the levy.

It is provided in section 927 of the Probate Code that upon the filing of an account by an administrator "any person interested in the estate may appear and file written exceptions to the account, and contest the same". No statutory definition has been given of the words "person interested in the estate". It has been held that the assignee or grantee of an heir is an interested person (*Estate of Ross,* 179 Cal. 358 [182 Pac. 303]). In an early case Judge Coffey held that a judgment creditor of a devisee who had acquired title to realty inventoried in the estate under an execution upon a judgment is a party interested in the estate. (*Estate of Love,* 1 Coffey Prob. Dec. 537.) In the case entitled *Estate of Lind,* 1 Cal. (2d) 291 [34 Pac. (2d) 486], a judgment creditor of William Lyons, the legatee under the will, had levied an execution on the interest of Lyons in the estate. When the petition for distribution came on for hearing the judgment creditor objected on the ground that the levy of execution on the interest of Lyons was not mentioned in the petition as provided in section 561 of the Code of Civil Procedure. Notwithstanding the objection the trial court admitted the account and ordered distribution in accordance with the petition. Thereupon the objector moved the court to amend the decree of distribution by inserting therein an order directing sufficient of the cash legacy to Lyons to be delivered to the sheriff to satisfy the amount due on the judgment. This motion was denied. In reversing the order of the trial court the reviewing court held that "the judgment creditor properly called the attention of the court, on motion, to the omission, and the decree of distribution should have been made to provide for distribution to the legatee of the amount of the legacy, when the decree should become final, but that the delivery of the money be made to the officer making the levy, subject to the claim of the legatee or any person claiming under him". It is apparent that in this case the judgment creditor of the legatee was recognized as an interested person. In *Garwood* v. *Garwood,* 29 Cal. 514, it was said that any doubt as to the question of interest ought to be resolved in favor of the party claiming an interest

in the estate. In the instant case the amount of appellant's judgment exceeds the total value of decedent's estate and it is manifest that the judgment creditor of the husband, practically the sole beneficiary under the will, is vitally interested in seeing that the property of the estate is properly accounted for and distributed to the legatee, the judgment debtor. To hold otherwise would be to refuse to give the word "interested" its generally accepted meaning.

Respondent points to the findings of the trial court and argues that although it was expressly held that appellant is not a "person interested" in the estate the court included in its findings statements that it had considered the account "in the light of the objections as well as wholly independent thereof" and that the account is true and correct. Respondent further asserts that full opportunity was given to appellant to present his objections and to offer evidence at the hearing. Appellant contends that he was not given such opportunity and that at the hearing the court took under advisement the question of his right to appear in the proceeding. He asserts that the matter was taken under advisement by the court for five or six months and that when he learned that the court proposed to make findings approving the account he attempted to have the matter reopened for the presentation of additional evidence, a statement of which he inserts in his brief. To consider properly the contentions of the parties a somewhat detailed relation of the various steps in the proceedings should be made.

In his petition for the probate of the will filed June 9, 1937, respondent stated that the estate consisted in part of "cash, approximately $2000". In the inventory which respondent filed on July 6, 1937, he listed as the property of the estate "cash approximately $2000" and certain corporate stocks of the appraised value of $1211.25. In his first account, which was filed on May 29, 1939, respondent listed as cash in the estate the sum of $694.88. The first account also sets forth the sum of $146.15 which respondent credited to himself for expenditures made. It appears that on May 1, 1939, respondent was examined concerning his property on supplementary proceedings growing out of the litigation in which appellant's judgment was obtained and he was then confronted with his statement in the inventory concerning the $2,000 cash listed among the assets of his wife's estate. On June 2, 1939, re-

spondent filed what he termed a supplemental inventory, in which he made this statement: "That in the original inventory filed by the administrator, it was stated that there was 'approximately' $2000 in cash in the estate of Else Lackner Reinicke, the administrator's wife. That, however, this was an error. That the administrator is unaware as to precisely how said error occurred, except that he was in a hurry to make a trip to Germany and signed said inventory and statement of assets without checking the same carefully, with the result that through some oversight, typographical error, or misunderstanding, the cash indicated in the original inventory was, and is, erroneous. That since signing said inventory, the administrator had not seen a copy of said inventory or examined the same, until approximately one week ago, at the time of a supplemental hearing before the Honorable Kurtz Kauffman, at which time a portion of the inventory was read to him and he then and there recognized that there was an error, and thereafter consulted with his attorney for the purpose of clarifying said statement and of filing this supplemental inventory to set forth the true facts. That the total amount of cash which came into the hands of said administrator was and is the sum of . . . 694.88. . . . That in any event, said error was entirely due to inadvertence and oversight. That further, on or about the 8th day of June, 1937, said administrator wrote a letter to his attorney in which he stated the amount of cash on hand, which was prior to the time of the signing of said inventory, but that apparently the matter of said letter was overlooked in the preparation of said inventory. and that said error accordingly arose, as aforesaid. That a copy of said letter so sent to his attorney is attached hereto marked Exhibit A and expressly and by this reference made a part hereof as though set forth here in full." In the letter referred to as Exhibit A, purporting to have been written by respondent to his lawyer, and which does not appear to have been signed, the statement is made that decedent left the sum of $4,659.04, that according to the arrangement made between decedent and respondent the sum of $255.89 representing household expenditures should be deducted from decedent's cash and that of the remaining sum of $4,403.15 decedent voluntarily offered to make a present of one-half thereof to respondent, who accepted it. In the exceptions filed to respondent's account appellant objects

to the action of respondent in charging himself with the sum of $694.88 in cash instead of the sum of $2,000. It is claimed that the explanation made by respondent "is wholly inadequate to elucidate the discrepancies".

When the hearing on the petition for the approval of the account came before the court on July 31, 1939, respondent objected to the consideration of the exceptions filed by appellant on the ground that he was not an interested person and a lengthy discussion on this issue followed. The court did not pass upon this objection at the hearing but both counsel discussed the merits of the account and respondent's explanation of the alleged error contained in the first inventory. During the course of this discussion counsel for appellant offered in evidence a copy of the transcript of the testimony of respondent given at his examination under supplementary proceedings before the commissioner of the court. No other evidence was offered by either party. Although respondent was present in court he was not called as a witness to swear that the account was correct or to submit himself to cross-examination on the question of the discrepancy between the amount of cash stated in the inventory and the amount stated in the account. There was further discussion between counsel relative to several small items with which respondent had credited himself in the matter of costs in certain litigation, whereupon the court said: "I will take the matter under submission". Counsel for appellant then asked, "May we say this, in the event there should be any doubt as to these figures the matter may be brought on further before Your Honor for any explanation?" To this the court replied, "Alright."

The hearing in the lower court was not conducted in the manner in which proceedings of this nature are usually conducted. In the usual course the administrator should be called as a witness to verify the items of his account and to submit himself to cross-examination. The objector should be given a clear opportunity to cross-examine and to present evidence on his own behalf. It is to be noted that the court erroneously took into consideration statements contained in the letter purported to have been written by respondent to his attorney and that the contents of the letter were before the court without the support of any sworn statement that they were true. The statement of respondent in his supple-

mental inventory purports to excuse an error previously made and merely refers to an unverified letter which he had long before sent to his attorney. In considering the claim of respondent that his wife made him a present of a large sum of cash during her lifetime, it should be borne in mind that there is a presumption that decedent would contradict the testimony of a living witness that during her lifetime she gave away her property (*Bard* v. *Kent*, 35 Cal. App. (2d) 434 [95 Pac. (2d) 957]). In view of the error of the court in considering the unverified letter, the unusual manner in which the proceeding was conducted, the challenged difference between the amount of cash mentioned in the inventory and that mentioned in the account, the uncertainties under which appellant labored as to his status before the court and the uncertainty appearing in the record as to the scope of the matter taken under advisement by the court, a reversal must be ordered to the end that the right of appellant to object be recognized and both parties be accorded a full and fair opportunity to present the various issues on legal evidence.

 Respondent contends that the account was full and fair on its face and that the court had the inherent right to approve it. He quotes from 11B Cal. Jur., page 592: "Generally the presentation of an account which is full and fair on its face and in accordance with statutory requirements will make a *prima facie* case, so far as it is uncontested, in favor of the accounting representative for settlement. . . . " We cannot take the view that the account before us is full and fair on its face. In the account as originally filed respondent, after detailing charges of $103.59 and credits of $146.15, stated: "That the balance of cash on hand as above set out is the sum of $548.73". In the next paragraph he stated: "That the total assets of the estate consists of $694.88 in cash and the following described stocks". It is not clear how respondent can justify the statement that the cash on hand was $548.73 and also the statement that among the cash assets was the sum of $694.88. On June 16, 1939, respondent filed a document which he entitled "supplement to first account of administrator". In this document he stated: "That the total assets of the estate, in respect to cash, consist, as set forth on line 15 of page 2 of said first account, of $694.88, plus the sum of $103.59, set forth at line 29 of page 1. That in other words, the total cash assets aggregate the sum of

$798.47, and that through oversight, in the first account these two sums were not added together, although they both appear correctly in the account." Even with the addition of the "supplement" the account is not clear. Moreover, it is apparent from the record that the court improperly took into consideration in passing upon the account the unverified statements in the letter of respondent to his counsel.

In appellant's reply brief the following appears: "To discuss *seriatim* in the body of this brief, the various allegations of respondent's brief would be too suggestive of two fishwives, battling over a back fence. In order that most of the irrelevant matters which appear therein shall not add to the confusion we shall append to this brief an appendix, which we shall entitle 'The Unfounded and Scandalous Allegations and Assertions of the Respondent's Reply Brief.' We do not imagine that the court will need to refer to this appendix, but should any point arise wherein it may be useful, it will be there for the court's inspection." We see no propriety in adding this "appendix" to the brief. It is ordered that it be stricken from the files.

The order is reversed, appellant to recover costs from respondent.

Moore, P. J., and McComb, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 12, 1941.